**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Parental Rights to:<br><br>B.G.B. and N.S.B., Minor Children. | No. 86094-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — C.U. appeals the trial court's order terminating her parental rights to B.G.B. and N.S.B.[1]  We conclude the trial court's findings of fact and conclusions of law are supported by substantial evidence and the trial court did not err in terminating C.U.'s parental rights.  We therefore affirm.

I

C.U. is the mother of four children, the youngest of whom are N.S.B. (born in 2014) and B.G.B. (born in 2016).  The Department of Youth, Children and Families (the Department) has been working with C.U. since 2011.  C.U.'s parental rights to her oldest child were terminated in 2014, and she voluntarily relinquished her parental rights to her second child in 2015.  N.S.B. was found dependent shortly after birth in 2014, but the dependency was dismissed in 2016 after C.U. engaged in services and made significant

---

[1] The father's parental rights to both children were terminated in April 2023, and he is not involved in this appeal.

progress such that the Department and juvenile court determined she had remedied her parental deficiencies.

In April 2018, based on renewed safety concerns, the Department filed dependency petitions regarding N.S.B. and B.G.B. On July 20, 2018, N.S.B. and B.G.B. were found dependent as to C.U. by agreed order and placed with their sibling and his adoptive parents. The agreed disposition order required C.U. to participate in remedial services, including individual mental health counseling, group dialectical behavioral therapy (DBT), random urinalysis testing, parent education, and evidence-based in-home services once return home is imminent and to follow through with any recommendations. Following a contested disposition in September 2018, the court additionally ordered C.U. to participate in a parenting assessment and to follow treatment recommendations.

Social worker Ann Culotti was assigned to C.U.'s case in April 2018. C.U. initially made "remarkable efforts," and the plan in early February 2020 was for the children to return to her. But before that happened, C.U. damaged her apartment and was evicted. Between March and September 2020, C.U. maintained compliance with available mental health treatment despite COVID restrictions. In mid to late 2020, C.U.'s therapist retired and group DBT was canceled due to restrictions. Culotti ceased being C.U.'s social worker from September 2020 through May 2021, and the case was temporarily assigned to a different social worker. During that time, C.U. moved to Portland, where she twice tested positive for methamphetamines. When Culotti resumed working with C.U. in May 2021, C.U. had returned from Portland and was unhoused and ill.

In June 2021, the Department petitioned to terminate C.U.'s parental rights to N.S.B. and B.G.B. The Department alleged that C.U.'s parental deficiencies included

unresolved mental health issues, cognitive limitations, inadequate parenting skills, untreated substance use disorder, failure to attend medical appointments, and lack of understanding of the children's developmental needs. The Department alleged, in pertinent part, that all ordered and necessary services had been offered or provided and there was little likelihood that conditions would be remedied such that the children could be returned to C.U. in the near future. The Department also alleged that active, but unsuccessful, efforts were made to provide remedial services and to prevent the breakup of the Indian family and that placing N.S.B. and B.G.B. in C.U.'s custody would likely result in serious emotional or physical harm to the children.

The termination trial took place over six days in September and October 2023. C.U. frequently absented herself from trial for various reasons and eventually stopped attending altogether. At the trial, the court considered the testimony of C.U., Culotti, Dr. Nicole Brisson (C.U.'s parenting evaluator), visit supervisor Carl Roach, qualified expert witness Richard England, Carol Whitemen of Cordant Laboratories, medical records supervisor Melita Sanders, and Kathy DeKay (the court appointed special advocate (CASA) assigned to the children), and admitted 78 exhibits into evidence.

On October 10, 2023, the trial court terminated C.U.'s parental rights. In so ruling, the court recognized "[t]here was no credible evidence at trial about the Department's interaction with the mother between September 2020 and May 2021 when Ms. Culotti resumed" working with C.U. and "[d]uring September 2020-May 2021, the only evidence of active efforts by the Department is from the Dependency Court orders entered regarding that period." But the court stated: "Although the Department's efforts and the mother's response thereto were complicated by COVID restrictions, Mr. Fuller's

3

retirement,[2] and the Department's reassignment of a social worker other than Ms. Culotti [in] September 2020-May 2021, looking at 5 years of efforts by the Department, the Court finds the Department's efforts were overall affirmative, active, thorough, and timely."

Confirming the importance of more recent efforts, the court explained that "[m]ost significant and most relevant to this termination are the efforts made by the Department from May 2021 through the present," during which time "Ms. Culotti made repeated and continuous efforts to engage the mother in services, beyond merely providing referrals to those services." Based on these findings, the court concluded the Department had established the necessary statutory factors by clear, cogent, and convincing evidence, "including that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." This timely appeal followed.

II

C.U. argues the trial court erred in concluding the Department met its burden to provide "active efforts" as required to terminate parental rights under the Indian Child Welfare Act, 25 U.S.C. § 1901 (ICWA), and the Washington State Indian Child Welfare Act, chapter 13.38 RCW (WICWA).[3] We disagree.

Under Washington law, the termination of parental rights is a two-step process. *In re Welfare of A.B.*, 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). "First, the Department must show that it satisfied its statutory obligations under the six elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence, and then it must establish that

---

[2] William Fuller was C.U.'s therapist. He retired in mid-2020.

[3] Both ICWA and WICWA apply here because N.S.B. and B.G.B. are members of the Angoon Community Association and Tlingit and Haida Indian Tribes.

termination of parental rights would be in the child's best interest by a preponderance of the evidence." *Matter of Dependency of G.C.B.*, 28 Wn. App. 2d 157, 171, 535 P.3d 451 (2023). Where termination proceedings involve an Indian child, as here, both ICWA and WICWA require the trial court to make two additional determinations: (1) the Department must "satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful" (RCW 13.38.130(1); 25 U.S.C. § 1912(d)); and (2) the court must find that the Department proved beyond a reasonable doubt that the parent's continued custody of the child is likely to result in "serious emotional or physical damage to the child" (25 U.S.C. § 1912(f); RCW 13.38.130(3)).

To satisfy the active efforts requirement, the Department must "meaningfully engage" with a parent to address the services necessary for family reunification. *In re Dependency of G.J.A.*, 197 Wn.2d 868, 895, 489 P.3d 631 (2021). "Active efforts means affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family." *Matter of Dependency of A.T.*, 29 Wn. App. 2d 687, 704, 541 P.3d 1079 (2024) (quoting 25 C.F.R. § 23.2) (emphasis omitted). Additionally, "active efforts" must be both "timely and diligent" and "tailored to the facts and circumstances of the case." *Id.* (quoting RCW 13.38.040(1)(a); 25 C.F.R. § 23.2). Whether the State satisfied this requirement is a mixed question of law and fact. *In re Dependency of A.L.K.*, 196 Wn.2d 686, 697, 478 P.3d 63 (2020). "We review the underlying findings for substantial evidence, but review de novo whether those findings satisfy the requirements of ICWA." *Id.*

Here, substantial evidence supports the trial court's finding that "[a]ctive efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, beyond simply providing referrals to such services, however these efforts have proved unsuccessful." Culotti testified at length regarding her efforts to engage C.U. in a variety of services. Culotti frequently called and texted C.U., repeatedly requested in-person meetings with C.U. to discuss her services, and met with C.U. many times during the course of the dependency. When Culotti could not reach C.U., she would contact C.U.'s family or go to various locations in an attempt to locate C.U. Culotti drove C.U. to between 15 to 20 services or visits over the course of the case and offered rides many more times. Culotti purchased supplies for C.U. for in-person visits with her children and provided her with gift cards, a phone charger, bus tickets, and a white board to help her keep track of scheduled tasks or appointments. Culotti also completed a family unification program housing referral for C.U., attempted to reinstate mental health services for C.U., and kept an active visit referral open despite C.U.'s inconsistent visitation with the children. Despite these efforts, C.U. refused services and presented with paranoia and delusions.

C.U. does not specifically argue that substantial evidence does not support the trial court's active efforts determination. Rather, C.U. argues the trial court erred in its interpretation and application of the active efforts standard when it stated in its decision that the Department had "overall" made active efforts. But contrary to C.U.'s argument, the court did not articulate this point as a legal standard. Rather, the court correctly stated the applicable legal standard in concluding that "the foregoing findings of fact and the allegations of RCW 13.34.180 and .190 have been proven by clear, cogent and

convincing evidence including that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." Viewed in context, it is apparent that the trial court's use of the word "overall" was intended to summarize its application of the correctly stated legal standard to the operative facts given the active efforts that occurred over the two years immediately preceding the trial. C.U. has not persuaded us that the trial court misinterpreted or misapplied that legal standard.

C.U. relies on *A.L.K.* and *G.J.A.* in support of her contention that the Department failed to satisfy the active efforts requirement, but those cases are distinguishable. In *A.L.K.*, "there [was] no indication in the record that the social worker actively made attempts to help [the mother] access any services other than helping with one phone call and a case plan." 196 Wn.2d at 701. The court rejected the argument that providing active efforts in the past was sufficient to satisfy the active efforts requirement despite the absence of contemporaneous efforts. *Id.* at 702. This case presents the opposite situation: an alleged absence of active efforts during an earlier time period followed by more than two years of "repeated and continuous efforts to engage the mother in services" from May 2021 until entry of the termination order in October 2023. And in *G.J.A.*, our Supreme Court reversed a dependency court's finding that the Department made active efforts during the six-month dependency review period given that the Department's "untimely, inadequate referrals" and "passiv[e] engage[ment]" throughout the dependency fell "far short of the minimum standards of ICWA and WICWA." 197 Wn.2d at 912. Here, in sharp contrast to the complete lack of active efforts in *G.J.A.*, the Department did provide active efforts.

C.U. also argues the Department provided no evidence of any interactions from September 2020 through May 2021. Citing *G.J.A.* and *A.L.K.*, C.U. contends reversal is required because "[t]he Department must also be consistent in its provision of active efforts throughout the dependency." *G.J.A.*, 197 Wn.2d at 892 (citing *A.L.K.*, 196 Wn.2d at 701-02). But *G.J.A.* and *A.L.K.* do not hold that parental rights can never be terminated if there is a period of insufficient efforts at some point in the past where, as here, there is overwhelming evidence of active efforts before proceeding to termination. To the contrary, the court in *G.J.A.* held, "If the Department's actions fall below ICWA and WICWA standards, the court must order the Department to do more to comply with its statutorily imposed obligations before the case can proceed to termination." 197 Wn.2d at 875. *G.J.A.* thus provides strong support for the trial court's determination that "[m]ost significant and most relevant to this termination are the efforts made by the Department from May 2021 through the present."

Lastly, C.U. argues the trial court erred in considering her reticence to participate in services when it made its active efforts determination. That argument also fails. In *G.J.A.*, our Supreme Court held that the Department is not relieved of its duty to provide active efforts to Indian families based on apparent futility. 197 Wn.2d at 875-76, 903. Rather, "[a] parent's lack of engagement is relevant only insofar [as it relates to] the Department's burden to prove its efforts were unsuccessful." *Id.* at 906. Here, however, the trial court's findings do not reflect a determination that the court excused the Department from active efforts. To the contrary, the court expressly applied the standards announced in *G.J.A.* and found the Department did make active efforts, which nevertheless proved unsuccessful. Based on this determination, the court found that C.U.

was currently unfit to parent the children because, "since August 2021, [she] effectively refused to participate in and/or successfully complete services offered to correct her parental deficiencies."

The trial court did not err in finding that the Department engaged in active efforts and terminating C.U.'s parental rights.

Affirmed.

Feldman, J.

WE CONCUR:

Birk, J.

Hazelrigg, A.C.J.